■ ADIRONDACK BANK, as Successor to SARANAC LAKE FEDERAL SAVINGS AND LOAN ASSOCIATION, Appellant, v F. PETER SIMMONS et al., Respondents. [619 NYS2d 383] —Mikoll, J. P. Appeal from a judgment of the Supreme Court (Duskas, J.), entered September 24, 1993 in St. Lawrence County, upon a decision of the court in favor of defendants.

Plaintiff is the successor in interest of Saranac Lake Federal Savings and Loan Association (hereinafter the Bank). This appeal concerns a lawsuit brought by the Bank against defendants for judgment granting foreclosure of a real estate mort-

gage dated January 30, 1987. Defendants denied the material allegations of the complaint and asserted defenses and counterclaims, including ones asserting that the note and mortgage were unenforceable for lack of consideration. Defendants sought rescission of the note and mortgage.

The evidence disclosed that defendant F. Peter Simmons enjoyed "overdraft protection" at the Bank. He would leave signed but blank promissory notes with the Bank which, on his specific authorization, would be made out for an agreed amount to allow Simmons to make payments of travel expenses billed on his credit cards. When authorized, the Bank would complete a note in a specified amount and deposit the loan proceeds in Simmons' account. The Bank's then-president, Charles Antonucci, a close friend of Simmons, asked Simmons in April 1986 to help him in accommodating Don Dattola, a real estate developer, who needed a $50,000 loan to complete a sale of New Mexico development property. Antonucci explained that he had exceeded his authority in lending money to Dattola and needed Simmons' assistance. He asked Simmons for permission to put the $50,000 loan through Simmons' account for transmission to Dattola.

Simmons was advised that there would be no record of the $50,000 fund transfer to Dattola and that Simmons would have no responsibility to repay the funds. Simmons was given a blank credit application by Antonucci which he said he needed to show Simmons' current employment. Using one of the signed blank notes Simmons left with the Bank, a Bank employee, without Simmons' permission, filled it out for $50,000 payable by August 1, 1986 at 10.5% interest and providing that it was secured by a mortgage on certain vacation property owned by defendants. A check for $50,000 was drawn by the Bank and deposited in Simmons' checking account. The $50,000 was withdrawn from Simmons' account through a wire transfer to Dattola's account in New Mexico. The Bank forwarded a proposed real estate mortgage to Simmons which he did not execute.

Antonucci then sought to convince Simmons to execute the mortgage purportedly to satisfy the Federal examiner who was examining the Bank as to the loans to Dattola. Antonucci assured Simmons that if he executed a new note covering the $50,000 loan and other legitimate debts Simmons owed the Bank and a mortgage to cover the $50,000 note, the latter would not be recorded and that Simmons would not have to make any payments, that Antonucci would put funds in the Simmons checking account and take care of all payments, and

that the mortgage papers would only be for file documentation purposes of the Federal examiner. New documents were forwarded to defendants who, after a series of discussions with Antonucci, executed them on January 30, 1987. They were recorded on February 17, 1987 without defendants' knowledge. The mortgage covered lots seven and nine of certain property owned by defendants located in the Town of Piercefield, St. Lawrence County. Lot seven was released from the lien of the mortgage by a document signed by Antonucci and recorded on November 18, 1987, which noted $20 as consideration. When Antonucci forwarded a Federal truth-in-lending disclosure statement, dated February 19, 1987, defendants refused to sign. Defendants learned in October 1987 that the mortgage was recorded.

Antonucci resigned as president of the Bank. Defendants told the new president, Phillip Newcomb, about the circumstances surrounding the transaction. Antonucci initially confirmed defendants' position, but subsequently stated that defendants knew they had to pay the $50,000 note. Defendants conceded that $11,751.39 of the money represented by the $71,500 mortgage constituted their actual obligation to the Bank and their tender of that amount was accepted. Payments upon the note secured by the mortgage ceased in June 1988 and the Bank made written demand on November 1, 1988 upon defendants to pay the mortgage balance in full or bring all arrearages up to date by December 6, 1988. Upon defendants' failure to satisfy the demand, this action was commenced. Following a nonjury trial, Supreme Court found that there never had been a loan for the $50,000 between defendants and the Bank and that the balance of the note is unenforceable for lack of consideration.

On this appeal, plaintiff contends that Supreme Court erred in finding lack of consideration. Plaintiff argues that Simmons did receive the $50,000 in his account and that Simmons admitted he agreed to the transfer of funds to Dattola through his account, which constitutes consideration. We disagree. Plaintiff construes the court's finding too narrowly. Supreme Court found that no loan was ever intended by the parties and that the transaction was merely an accommodation made by Simmons for his friend, Antonucci. Such finding is amply supported by the record.

Plaintiff's further contention that the January 30, 1987 promissory note signed by defendants was proper and complete on its face and that Supreme Court erred in considering parol evidence in concluding that the $50,000 was never

actually loaned to defendants is also without merit. Although parol evidence is inadmissible to contradict or vary a written contract, evidence which negates the existence of a binding contract is admissible, not to contradict or vary its terms, "but to destroy the written instrument as one unfit to represent the engagement of the parties" (58 NY Jur 2d, Evidence and Witnesses, § 609, at 239). The evidence presented was directed to that purpose and was properly admitted by Supreme Court.

Crew III, Casey and Peters, JJ., concur. Ordered that the judgment is affirmed, with costs.